IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN DURANT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:16-CV-965-RP |
| | § | |
| GREENFIELD AND | § | |
| FORTENBERRY, LLC, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are the parties' cross-motions for summary judgment, (Dkts. 27, 28), and

the report and recommendation of United States Magistrate Judge Mark Lane filed on April 19,

2018. (Dkt. 36). Judge Lane recommends that the Court deny Defendants' motion for summary

judgment and grant in part and deny in part Plaintiff's motion for summary judgment. (*Id.*). The

Court adopts the report and recommendation.

## I. BACKGROUND

Plaintiff John Durant, a photographer, brings this copyright claim against Defendants

Patricia Fortenberry and Greenfield and Fortenberry, LLC.[1] Durant contends that Defendants

displayed three photographs, to which he has registered copyrights, on their website and in

brochures advertising their business for three years. (Pl.'s Mot. Summ. J., Dkt. 28, at 1, 5, 7).

Defendants do not dispute infringement, but they contend that an agreement previously entered into

between Durant and a third party, Seton Hospital, which released Seton from a copyright claim

---

[1] Durant originally brought an additional claim pursuant to the Digital Millennium Copyright Act ("DMCA"), but he
appears to have dropped that claim. He has represented to the Court on multiple occasions that the case can be decided
on the parties' cross-motions for summary judgment. He did so in his motion to extend his deadline to file a dispositive
motion, (Mot. Extend, Dkt. 23, at 6 ("Allowing Durant to file a motion for summary judgment would eliminate the need
for trial . . . .")), and at the scheduling hearing on November 7, 2017. However, the motion he represented would be
sufficient to resolve the case does not mention a DMCA claim; the motion is devoted exclusively to his copyright
infringement claim. Accordingly, he has effectively withdrawn the DMCA claim.

concerning a group of photographs that contains the photographs at issue in this suit, also releases Defendants from infringement claims by Durant. (Defs.' Mot. Summ. J., Dkt. 27, at 7–8; Defs.' Resp. Pl.'s Mot. Summ. J., Dkt. 33, at 2–3). The parties also dispute the amount of damages, if any, that should be awarded to Durant in the event the Court finds Defendants liable. Durant contends that he is entitled to the amount that he would have been able to charge as a fair market license fee for the use of the three photographs for commercial purposes for three years, regardless of whether or not Defendants would have agreed to pay such a price. He argues that this amount is $18,000, citing a previous license agreement between Durant and another party governing the use of different photographs taken by Durant. (Pl.'s Mot. Summ. J., Dkt. 28, at 5–8). Defendants contend that Durant is entitled to either nothing because he has not produced sufficient evidence of the photographs' value or, at most, $222.21. Defendants calculate this amount based on the settlement agreement entered into between Seton and Durant, dividing the amount paid by the number of photographs included in the release. (Pl.'s Mot. Summ. J., Dkt. 27, at 9).

## II. LEGAL STANDARD

### A. *Federal Magistrates Act*

A party may file specific, written objections to the proposed findings and recommendations of the magistrate judge within fourteen days after being served with a copy of the report and recommendation, thereby securing *de novo* review by the district court. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Defendants Greenfield and Fortenberry, LLC and Patricia Fortenberry (together, "Defendants") filed objections on May 3, 2018. Defendants object to two aspects of the recommendation: (1) the finding that Defendant is liable for copyright infringement and was not covered by the third-party contractual release under which Defendant seeks shelter, and (2) the finding that factual disputes surrounding the correct amount of damages preclude the award of

summary judgment on that issue to either side at this stage. Accordingly, Defendants are entitled to *de novo* review on these aspects of the report and recommendation.[2]

### B. Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party must demonstrate "the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995). "Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.'" *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Transamerica*, 66 F.3d at 718–19).

If the movant meets its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).

---

[2] The recommendation that the motions both be denied as to attorney's fees was not timely objected to. Accordingly, the Court reviews this recommendation for clear error. *See* Fed. R. Civ. P. 72 advisory committee's note ("When no timely objection is filed, the [district] court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). Finding none, the Court adopts the recommendation as to attorney's fees.

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

Cross-motions for summary judgment "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

## III. DISCUSSION

### A. Liability

The Court finds that Defendants were liable for copyright infringement for substantially the same reasons as stated in the report and recommendation. Accordingly, the report and recommendation's finding that Defendants are liable is adopted.

### B. Damages

Judge Lane found that a factual dispute concerning damages precludes the award of summary judgment to either party on this issue. The parties agree in their objection to that finding; each party contends that it is correct about the amount of damages as a matter of law and that it would be appropriate for the Court to arrive at the same conclusion at the summary judgment stage. Durant, citing the licensing fee he has charged in the past for different photographs, contends that he is entitled to $18,000 in actual damages. Because he licensed different photographs for $4,000 each for two years, he reasons that a similar license is warranted here. Accordingly, he contends that he is entitled to $6,000 per photograph, because each of the three photographs at issue was used by Defendants for three years. Defendants argue that the damages should be limited to $222.21. They

calculate the photographs' worth via a settlement agreement between Durant and Seton (the "Seton Release") that allegedly values the pictures at $74.07 per picture. Defendants contend that the Seton Release, because it concerns these precise pictures, is the only relevant evidence of their value, whereas the evidence proffered by Durant is inapposite because it pertains to different pictures that are not sufficiently analogous.[3]

A copyright infringement plaintiff may pursue either actual damages or statutory damages. 17 U.S.C. § 504(a). Here, Durant seeks actual damages. (Mot. Extend, Dkt. 23, at 7 ("In order to expedite resolution and avoid the additional expense of pre-trial and trial preparation costs, Durant will pursue only actual damages in a motion for summary judgment and [forgo] the option of proving willful infringement and recovering statutory damages at trial.")).

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.

17 U.S.C. § 504(b). Because there is no evidence in the record concerning any "profits of the infringer," Durant is entitled only to actual damages "suffered . . . as a result of the infringement." *Id.* The text of the statute does not provide guidance on how to calculate actual damages, but courts have permitted a showing of actual damages via "reasonable royalty rates,"[4] or "what a willing buyer would have been reasonably required to pay a willing seller as a licensing fee for the actual use of the copyrighted material by the infringers." *MGE UPS Sys. v. GE Consumer & Indus. Inc.*, 622 F.3d 361, 366 (5th Cir. 2010) (citing *Davis v. Gap, Inc.*, 246 F.3d 152, 167 (2d Cir. 2001)). Although the Fifth Circuit adopted the hypothetical license construction as a valid method of determining actual

---

[3] *See* Defs.' Mot. Summ. J., Dkt. 27, ¶ 25 (likening this comparison to the comparison of a photograph of Jimi Hendrix setting his guitar on fire to a picture of a bluebonnet). Indeed, it is difficult to compare the photographs with those licensed by Durant previously because those photographs are not in the record. Durant contends that the photographs are sufficiently analogous because the circumstances under which he licensed them were similar to those present here. *See* Pl.'s Mot. Summ. J., Dkt. 28, at 7 (contending that the attached license is an appropriate "benchmark license for what licensors have paid for use of similar work" because that license was also for "images created for architectural clients in marketing and advertising").

[4] Sometimes called a "hypothetical license fee." *E.g.*, *Real View, LLC v. 20-20 Techs., Inc.*, 811 F. Supp. 2d 553, 557 (D. Mass. 2011).

damages in a copyright case, *id.*, it has not expounded significantly on the appropriate way to do so. Perhaps the most thorough discussion of the rationale behind the calculation of a hypothetical license fee can be found in a Second Circuit case, *Davis v. The Gap, Inc.*, 246 F.3d 152, 161 (2d Cir. 2001). In *Davis*, the court reversed the district court's grant of summary judgment in favor of the defendant in a copyright claim, finding that the evidence produced by Davis was sufficient to support actual damages. Specifically, Davis testified that he was paid $50 for the publication of a photograph of a musician wearing the eyewear designed by Davis. *Id.* The court found that "a jury could reasonably find that Davis established a fair market value of at least $50 as a fee for the use of an image of his copyrighted design." *Id.*[5]

### 1. The Seton Release

The only evidence provided by Defendants in support of their assertion that damages should be limited to just over $200 comes from the Seton Release between Durant and Seton Hospital. Defendants contend that the $10,000 payment made by Seton to Durant in exchange for release from copyright liability for past use of 135 photographs demonstrates that each photograph is worth only $74.07. Although Durant contends that the $10,000 was made in exchange for the use of only one photograph, (Pl.'s Resp. Defs.' R&R Objs., Dkt. 38, at 5), the agreement on its face defines the "releasor claim" as Seton's "unauthorized use of releasor's photographic images," which the definition further explains "include without limitation all of the 100+ photographic images" attached to the agreement as Exhibit A and available via a link provided in the agreement. (Seton Release, Dkt. 27-7, at 1). Therefore, regardless of how many photographs Durant says were in fact used by Seton, the release covers all of the photographs attached, and therefore can be interpreted as one measure of their collective value. While Durant is correct that this agreement does not constitute a

---

[5] The court did not find that this evidence conclusively established Davis' entitlement to actual damages of $50 per infringing use. It merely found that this evidence was sufficient to defeat summary judgment and that a reasonable jury could use that evidence to find a fair market value of $50 per use of Davis' design. *Davis*, 246 F.3d at 161.

"voluntary license," that does not mean it cannot serve as evidence of the value of the photographs. After all, the entire exercise of constructing a hypothetical license is a fairly nebulous undertaking that rests upon the often counterfactual assumption of a willing seller and a willing buyer; it is often imposed even where the infringer would not have willingly paid for its use of the copyrighted material. *See Davis*, 246 F.3d at 172 ("The usefulness of the [hypothetical license] test does not depend on whether the copyright infringer was in fact himself willing to negotiate for a license.").

Durant is correct to note that the Seton Release also provides for a payment of $1,500 per photograph per 45 days in the event that Seton used any of the photographs covered by the agreement after the effective date of the agreement. (Release, Dkt. 27-7, at 2). There is no evidence in the record that Seton actually did use the photographs again or pay that amount. But a reasonable factfinder could draw an inference about the photograph's value from the fact that Seton agreed to pay that amount in the event it did decide to use the photographs in the future.

Durant also argues—for the first time in his objections to the report and recommendation—that the settlement agreement is inadmissible pursuant to Federal Rule of Evidence 408. The Rule prohibits the introduction of settlements in certain circumstances. In relevant part, it states that in order to "prove or disprove the validity or amount of a disputed claim," Fed. R. Evid. 408(a), a party may not introduce evidence of "accepting . . . a valuable consideration in compromising or attempting to compromise the claim." *Id.* at 408(a)(1). As Durant points out, the rule is not limited to settlement negotiations and agreements between the parties to the suit and may apply to agreements between a party and a non-party. *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1069 (5th Cir. 1986). However, the purpose of the evidence of the settlement here is not used to prove the validity or amount of "the claim" that was settled by the Seton Release. Rather, it is proffered as some evidence of the appropriate market value to assign the photographs as the factfinder constructs a hypothetical license fee.

The Fifth Circuit has determined that the definition of the word "claim" in Rule 408 is not so restrictive as to mean "the same legal claim." Accordingly, there are circumstances in which the rule might apply to exclude a settlement agreement regarding a different claim than that resolved by the agreement. For example, the Fifth Circuit has applied the rule to "distinct legal claims arising out of a common event." *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 297 (5th Cir. 2010). However, "settlement evidence is not inadmissible merely because it relates to circumstances that are 'similar' to those being litigated." *Id.* at 297–98 (citing *Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992)). Here, Durant seeks exclusion of a prior settlement agreement that concerns some of the same photographs. Given the limited evidence of what an appropriate license would be for these specific photographs, the settlement agreement is one possible method of determining their value. *See Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007) (approving of the district court's consideration of—among other factors—the "settlement offer of $15,520 for all imaged infringed" made by the plaintiff to the infringer in assessing what the hypothetical license damages amount should be). The Seton Release should therefore not be excluded. However, its inclusion does not automatically entitle Defendants to a minimal damages award because Durant has submitted legitimate evidence of the photographs' market value that must also be considered.

### 2. Evidence of Past Licenses for Different Photographs

The Court finds that Durant has failed to provide sufficient evidence to entitle him to an $18,000 license as a matter of law. The sole piece of evidence produced to support his desired amount of damages is an invoice in which he charged someone $4,000 per photograph for the use of two photographs (not the photographs at issue here) for two years. (Durant Decl., Dkt. 28–8, ¶¶ 9–10; Invoice, Dkt. 28-8, Ex. A, at 5). In cases like this, "instances of past licensing can serve as a benchmark for measuring the fair market value of a reasonable license fee for the Photograph." *Baker v. Urban Outfitters*, Inc., 254 F. Supp. 2d 346, 359 (S.D.N.Y. 2003). However, "awarding the

copyright owner the lost license fee can risk abuse. Once the defendant has infringed, the owner may claim unreasonable amounts as the license fee." *Davis*, 246 F.3d at 166. "The question is not what the owner would have charged, but rather what is the fair market value." *Id.* Accordingly, "the owner must show that the thing taken had a fair market value." *Id.*

In order for a comparison like this to work, the image at issue in the license used as a benchmark must be sufficiently similar to the image in the fictitious license between infringer and owner. *See Baker*, 254 F. Supp. 2d at 354 (excluding expert testimony on appropriate license fee because the expert improperly compared the license fee for a stock photo with that of a commissioned photo); *see also Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 331 (S.D.N.Y. 2003) (excluding expert testimony for improperly comparing license that was much more expansive to the license at issue); *cf. Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446 (Fed. Cir. 1990) (finding, in the patent context, that "[a] single licensing agreement, without more, is insufficient proof of an established royalty"). Here, Durant has provided the Court with only one licensing agreement, along with Durant's assurance that this particular license agreement is "a typical secondary-use license."[6] (Durant Decl., Dkt. 28-8, ¶ 9). He says that this license agreement is similar to the terms of the hypothetical license agreement the Court should construct between infringer and copyright owner because the images in that license agreement "are images of an interior of a building and the licensee used those photographs to promote and advertise its business that had a relationship with that building." (*Id.*). A reasonable jury might agree when presented with such evidence. *See Davis*, 246 F.3d at 161; *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004) (finding that "sufficient evidence supports the portion of the award related to the license fee" in a copyright infringement case where a jury relied upon an accountant's calculation of a reasonable

---

[6] Durant states in his declaration that by secondary-use license he means "similar copyrighted photographs that I maintain and license, from time-to-time, for commercial use, including advertising and promotional rights, to licensees, including licensees who did not pay for the original assignment." (Durant Dec., Dkt. 28-8, ¶ 9).

license fee based upon the price for a license quoted to the infringer by the copyright owner, even in "the presence of contrary evidence"). But Durant has not produced sufficient evidence (especially given the evidence produced by Defendants that would support a lower license rate) to demonstrate entitlement to $18,000 in damages as a matter of law. *Cf. Bell v. Taylor*, 827 F.3d 699, 709 (7th Cir. 2016) (affirming district court's grant of summary judgment in favor of the defendant as to actual damages where the plaintiff "never produced any evidence supporting his assertion that he has sold the photo for $200").

### C. Attorney's Fees

Judge Lane recommends that the Court decline to rule on Durant's requested attorney's fees because the amount of damages is still in dispute. Because the Court agrees that summary judgment should be denied to both parties on the issue of damages, it adopts this recommendation, as well.

## IV. CONCLUSION

Accordingly, the Court **ORDERS** that the Report and Recommendation of the United States Magistrate Judge, (Dkt. 36), is **ADOPTED**. For the reasons stated in the Report and Recommendation, **IT IS ORDERED** that Durant's motion for summary judgment, (Dkt. 28), is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to liability, but denied as to damages and attorney's fees. Defendants' motion for summary judgment, (Dkt. 27), is **DENIED**. The damages must be determined at trial. The Court will set a date for the trial by separate order.

**SIGNED** on June 28, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE